J-A10043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JEREMY LYNN COONS | : | |
| | : | |
| Appellant | : | No. 1121 MDA 2021 |

Appeal from the Judgment of Sentence Entered June 29, 2021
In the Court of Common Pleas of Adams County
Criminal Division at No(s):  CP-01-CR-0000525-2020

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: JULY 19, 2022**

Appellant, Jeremy Lynn Coons, appeals from the judgment of sentence entered in the Adams County Court of Common Pleas, following his bench trial convictions for two counts of driving under the influence of a controlled substance ("DUI").[1]  We affirm.

The trial court opinion set forth the relevant facts and procedural history of this appeal as follows:

> The stipulated facts establish that on May 6, 2020, at approximately 9:08 a.m., Appellant was driving a vehicle on State Route 116.  State Route 116 is a public roadway in Hamilton Township, Adams County.  Trooper Matthew Geiman of the Pennsylvania State Police was employed and on patrol at the time as a patrol trooper.  As of the date of this incident, Trooper Geiman had been employed with the PSP for approximately six years, received standard field sobriety testing training while at the academy, and had

_____

[1] 75 Pa.C.S.A. § 3802(d)(1)(i), (iii).

arrested approximately 200 people for DUI—many of which involved marijuana.

Trooper Geiman was traveling eastbound on State Route 116 when he observed Appellant's vehicle travelling westbound on State Route 116. Trooper Geiman noticed an alleged illegal window tint on Appellant's vehicle. As Appellant turned his vehicle into a public parking lot in Fairfield Borough, Adams County, Trooper Geiman effectuated a traffic stop of Appellant's vehicle on the basis of the alleged illegal window tint. Trooper Geiman's interaction with Appellant during the traffic stop was visually and audibly recorded by dashcam video and was admitted into evidence for the bench trial. After interacting with Appellant, Trooper Geiman placed him under arrest and transported him to Gettysburg Hospital for blood testing. Appellant initially refused the blood draw, but after Trooper Geiman obtained a search warrant to collect the same, Appellant agreed to the blood draw pursuant to the search warrant.

At approximately 11:25 a.m., two vials of blood were drawn from Appellant's arm at the hospital and were then sealed and sent to NMS Laboratory for testing. The resulting blood tests showed the presence of active marijuana compounds (Delta-9 THC) and metabolites of those compounds (Delta-9 Carboxy THC) in Appellant's blood system. Marijuana is a Schedule I controlled substance pursuant to the Controlled Substance, Drug, Device and Cosmetic Act.

(Trial Court Opinion, filed 9/3/21, at 1-3).

On December 3, 2020, Appellant filed a suppression motion. Appellant proceeded to a suppression hearing on February 8, 2021. At that time, Appellant argued that Trooper Geiman lacked reasonable suspicion to detain Appellant or conduct field sobriety tests. (*See* N.T. Suppression Hearing, 2/8/21, at 4). The court denied the suppression motion on February 23, 2021. The court subsequently conducted a stipulated bench trial and found Appellant

- 2 -

guilty of two counts of DUI. On June 29, 2021, the court sentenced Appellant to an aggregate 84 months of probation with restrictive DUI conditions.

Appellant timely filed a notice of appeal on July 22, 2021. On August 2, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant filed his Rule 1925(b) statement on August 24, 2021.

Appellant now raises three issues on appeal:

> Whether the trial court erred in denying Appellant's suppression motion because there was no "reasonable" suspicion of DUI to force Appellant out of his vehicle to perform field sobriety tests, or the subsequent probable cause to take his blood, absent the alleged odor of marijuana and whereby the officer did not specify whether the alleged odor was of burnt or fresh marijuana.
>
> Whether the trial court erred in denying suppression after Appellant was directed to get out of his vehicle for an investigative detention, during which law enforcement admittedly engaged in an illegal warrantless search of his vehicle.
>
> Whether the trial court erred in denying Appellant's suppression motion because there was not sufficient probable cause to demand Appellant submit to a blood test.

(Appellant's Brief at 14).

Appellant's issues are related, and we address them together. Appellant argues that Trooper Geiman conducted a traffic stop due to the tinted windows on Appellant's vehicle. Appellant maintains that the subsequent traffic stop should have been limited to an investigation of this vehicle code violation, absent reasonable suspicion of some other criminal activity. Regarding the

- 3 -

existence of reasonable suspicion for other criminal activity, Appellant notes that there is no evidence that he drove erratically or exhibited slurred speech at the time of the stop. Although the trooper smelled marijuana, Appellant emphasizes that "the odor of marijuana, without more, is insufficient to establish reasonable suspicions of criminal activity to justify a detention for field sobriety testing, nor can it be used to establish probable cause…." (**Id.** at 27). Appellant further alleges that Trooper Geiman's observations that Appellant's eyes were bloodshot and glassy are unsupported by the record. Appellant concludes that the record did not support the suppression court's legal conclusions, and this court must vacate his judgment of sentence on this basis.[2] We disagree.

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a

---

[2] To the extent Appellant also alleges that the trooper conducted an illegal, warrantless search of the vehicle, the court noted that "the stipulated facts presented at trial did not include any evidence obtained from the search of Appellant's vehicle." (Trial Court Opinion at 4). Our review of the record confirms the court's reasoning, and we proceed to address the remaining claims regarding the legality of the vehicle stop, investigative detention, and blood draw.

whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018) (quoting *Commonwealth v. P. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015)).

Our analysis of the quantum of cause required for a traffic stop begins with the Motor Vehicle Code, which provides:

**§ 6308.  Investigation by police officers**

\* \* \*

**(b)   Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has **reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (emphasis added).

"[D]espite subsection 6308(b)'s reasonable suspicion standard, some offenses, by their very nature, require a police officer to possess probable cause before he or she may conduct a traffic stop." ***Commonwealth v.***

*Ibrahim*, 127 A.3d 819, 823 (Pa.Super. 2015), *appeal denied*, 635 Pa. 771, 138 A.3d 3 (2016). "For a stop based on the observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop." ***Commonwealth v. Harris***, 176 A.3d 1009, 1019 (Pa.Super. 2017). ***See also Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa.Super. 2010), *appeal denied*, 611 Pa. 650, 25 A.3d 327 (2011) (stating mere reasonable suspicion will not justify vehicle stop when driver's detention cannot serve investigatory purpose relevant to suspected violation).

Further, we note that an "investigative detention" is interchangeably labeled as a "stop and frisk" or a "***Terry***[3] stop." ***Commonwealth v. Brame***, 239 A.3d 1119, 1127 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 251 A.3d 771 (2021).

> An investigative detention … constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> \* \* \*
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that

---

[3] ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

criminal activity was afoot and that the person he stopped was involved in that activity.

**Commonwealth v. B. Jones**, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

Reasonable suspicion of DUI can arise where an officer observes "classic signs" of intoxication, such as the odor of intoxicants, slurred speech, and glassy eyes. **Commonwealth v. Cauley**, 10 A.3d 321, 327 (Pa.Super. 2010). When an officer possesses good reason to believe that a driver is intoxicated, he is justified in asking the driver to perform sobriety tests. **See Commonwealth v. Ragan**, 652 A.2d 925, 929 (Pa.Super. 1995), *appeal denied*, 541 Pa. 650, 664 A.2d 540 (1995).

Additionally, "[t]he administration of a blood test, performed by an agent of, or at the direction of the government, constitutes a search under both the United States and Pennsylvania Constitutions." **Commonwealth v. Johnson**, 188 A.3d 486, 489 (Pa.Super. 2018), *appeal denied*, 649 Pa. 179, 195 A.3d 852 (2018) (quoting **Commonwealth v. Evans**, 153 A.3d 323, 328 (Pa.Super. 2016)). The Fourth Amendment requires police to obtain a search warrant for a blood draw, provided that they can do so without significantly undermining the efficacy of the search. **See Commonwealth v. Trahey**, 658 Pa. 340, 355, 228 A.3d 520, 529 (2020). "It is hornbook law that search warrants may only issue upon probable cause…." **Commonwealth v. Leed**, 646 Pa. 602, 615, 186 A.3d 405, 413 (2018).

Probable cause is established when police have "knowledge of sufficient

- 7 -

facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that a crime has been committed." **Commonwealth v. Robinson**, 834 A.2d 1160, 1166 (Pa.Super. 2003) (quoting **Commonwealth v. Aiello**, 675 A.2d 1278, 1280 (Pa.Super. 1996)). "[T]he smell of marijuana indisputably can still signal the possibility of criminal activity," and it "may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause…." **Commonwealth v. Barr**, ____ Pa. ____, ____, 266 A.3d 25, 41 (2021).

Instantly, Trooper Geiman testified that he observed Appellant's vehicle travelling westbound on Route 116. (**See** N.T. Suppression Hearing at 10). Trooper Geiman noted that the "front window" of Appellant's vehicle was "tinted to a degree which prevented me from seeing in the vehicle." (**Id.**) Contrary to Appellant's assertions, the trooper testified regarding this specific observation of a vehicle code violation that caused him to execute a traffic stop of Appellant's vehicle. Thus, the record supported the suppression court's conclusion that the trooper possessed the requisite probable cause to initiate the traffic stop. **See Harris, supra**. **See also** 75 Pa.C.S.A. § 4524(e)(1) (stating vehicle cannot have window tint that obstructs view into vehicle through windshield, side wing or side window).

Trooper Geiman testified that as he approached Appellant's vehicle, he noticed a strong "odor of burnt marijuana" coming from Appellant's vehicle.

(**See** N.T. Suppression Hearing at 11). The trooper spoke with Appellant and observed that Appellant's eyes were glassy and bloodshot, with dilated pupils. (**Id.** at 12). Based upon the trooper's training and experience, he believed Appellant might have been intoxicated. (**Id.**) Additionally, Appellant appeared "extremely nervous," and he "was fidgeting around a lot when he was searching for his documents." (**Id.** at 13).

The smell of burnt marijuana, combined with Appellant's glassy, bloodshot eyes, nervousness, and fidgeting, allowed Trooper Geiman to develop reasonable suspicion that Appellant was operating his vehicle while intoxicated. **See Cauley, supra**. In light of this reasonable suspicion, Trooper Geiman properly asked Appellant to exit the vehicle and perform field sobriety tests. **See Ragan, supra**. Appellant subsequently failed the field sobriety tests. (**See** Affidavit of Probable Cause, dated 6/15/20, at 1). Appellant's inability to pass the sobriety tests, combined with the trooper's previous observations regarding the odor of marijuana and other indicia of intoxication, yielded the probable cause necessary to support the warrant authorizing the blood draw. **See Robinson, supra**; **Johnson, supra**.

Based upon the foregoing, we conclude that the suppression court's factual findings are supported by the record, and its legal conclusions are correct. **See Ford, supra**. Therefore, Appellant is not entitled to relief on any of his claims. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/19/2022