J-S40045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TED FORNEY III | : | |
| | : | |
| Appellant | : | No. 1964 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 21, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0004293-2021

BEFORE: PANELLA, P.J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                               **FILED APRIL 17, 2023**

Appellant, Ted Forney III, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his bench trial convictions for possession of a controlled substance, possession of a controlled substance with intent to deliver ("PWID"), possession of drug paraphernalia, and criminal use of a communication facility.[1] We affirm, albeit on different grounds.[2]

The trial court set forth the relevant facts of this appeal as follows:

> On May 5, 2021 at 1:07 A.M., Detective Stephen Reeves ("Detective Reeves") of the Falls Township Police

---

[1] 35 P.S. § 780-113(a)(16), (30), (32) and 18 Pa.C.S.A. § 7512(a), respectively.

[2] "[I]f a trial court's decision is correct, we may affirm on any ground." **Commonwealth v. Miller**, 787 A.2d 1036, 1038 (Pa.Super. 2001), *appeal denied*, 568 Pa. 735, 798 A.2d 1288 (2002).

Department responded to a shooting at the Castle Club Apartments, located at 254 West Trenton Avenue, Morrisville, Falls Township, Bucks County, Pennsylvania. Upon arrival, Detective Reeves observed a large amount of blood, consistent with evidence of a shooting, in an apartment located within the A Building of Castle Club Apartments. Detective Reeves began his investigation alongside Detective Frank Groome ("Detective Groome") of the Bucks County District Attorney's Office. Together, they collected video surveillance from the Castle Club Apartments' security system, which monitored the exteriors of each building as well as the surrounding parking lots. The footage from May 5, 2021 depicted a gray 2007 Nissan Altima ("Altima") with an inoperable fog light on the front passenger side pull into the parking lot near B Building at approximately 12:53 A.M. The footage then showed an individual exiting the Altima and walking toward the A Building of Castle Club Apartments at 12:55 A.M. Finally, the footage showed the same individual running from the A Building to the Altima at 1:01 A.M.[1] The Altima subsequently fled the area and was seen on Toll Bridge Commission video surveillance crossing the Calhoun Street Bridge, which connects Morrisville Borough and Trenton, New Jersey, at 1:06 A.M. The Altima crossing the toll bridge was identified as the same Altima at Castle Club Apartments by its make, model, and its inoperable fog light. Detective Reeves and Detective Groome were initially unable to distinguish the license plate from the Calhoun Street Bridge video footage. However, upon further investigation, they determined that the license plate read: KRW-7917. This license plate is registered to a Kristen Forney, Appellant's wife. Further, a known confidential informant informed Officer Denny Leighton ("Officer Leighton") of Bristol Township Police Department that Appellant was responsible for the shooting at the Castle Club Apartments. Officer Leighton relayed this information to Detective Reeves. Finally, officers learned through Appellant's Parole Officer, Lauren DiMaria ("Officer DiMaria"), that he was known to operate a gray 2007 Nissan Altima with license plate KRW-7917. Based on all of the aforementioned facts, Detective Reeves and Detective Groome determined that the Altima could have evidence of the shooting that occurred on May 5, 2021 and that Appellant was a person of interest in their investigation.

[1] The shooting occurred at approximately 1:00 A.M.

Officer DiMaria informed Detectives Reeves and Detective Groome that Appellant would be at a specific address, 5604 Truman Street, Bristol, Bristol Township, Bucks County, Pennsylvania on June 3, 2021. On that day, the detectives went to this address to make contact with Appellant. When they arrived, Appellant was standing in the driveway next to the Altima. The detectives were able to determine it was the Altima seen on Castle Club Apartments' video surveillance footage due to its make, model, and license plate. For officer safety, the detectives conducted a pat down of Appellant and found a proximity key for the Altima.[2] Appellant agreed to travel with the detectives to the Fall Township Police Department so they could speak privately. Appellant was not under arrest and the detectives informed him that he would be able to return to his residence after speaking with them. At this time, Detective Reeves and Detective Groome believed that the Altima itself was evidence of the shooting and that additional evidence could also be found within the vehicle. Due to concerns related to Appellant's newfound knowledge of an investigation, the Altima's inherent mobility, its location in plain view, and the belief that the evidence could be destroyed in the interim, Detective Reeves and Detective Groome towed the Altima to the Falls Township Police Department to secure it while they obtained a search warrant. On June 4, 2021, the detectives secured and executed a search warrant for the Altima. Detective Reeves and Detective Groome discovered twenty-eight (28) individually wrapped bags of methamphetamine and two (2) bags of marijuana.

[2] A proximity key will start the corresponding vehicle so long as it is in its proximity, it does not need to be placed in the ignition.

(Suppression Court Opinion, filed 8/19/22, at 1-3) (internal record citations omitted).

The Commonwealth filed a criminal information charging Appellant with PWID and related offenses. On June 15, 2022, Appellant filed an omnibus

pretrial motion seeking to suppress all evidence obtained from the search of the Altima. Among other things, Appellant argued that the police did not possess exigent circumstances to justify the warrantless seizure of the Altima. (*See* Pretrial Motion, filed 6/15/22, at ¶9). Regarding the subsequent search of the Altima, Appellant acknowledged that the police obtained a warrant. Appellant insisted, however, that the search warrant failed to demonstrate probable cause. (*Id.* at ¶10). The court conducted a suppression hearing on June 16, 2022. At the conclusion of the hearing, the court denied Appellant's suppression motion.

Appellant immediately proceeded to a stipulated waiver trial, and the court found him guilty of all charges. On July 21, 2022, the court sentenced Appellant to an aggregate term of five (5) to ten (10) years' imprisonment. Appellant did not file post-sentence motions. Instead, Appellant timely filed a notice of appeal on July 25, 2022. That same day, Appellant filed a voluntary Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant now raises one issue for this Court's review:

> Did the trial court err in allowing the seizure of Appellant's vehicle without a warrant and in not declaring the subsequent search to be unlawful and to suppress the fruits thereof.

(Appellant's Brief at 4).

On appeal, Appellant initially disputes the court's finding that police

- 4 -

lawfully seized the vehicle pursuant to the "plain view" doctrine.[3]  Appellant maintains that police did not actually want to seize his vehicle.  Rather, police "wanted the contents of the vehicle, which they thought might contain DNA, firearms, ammunition," or other evidence of the shooting.  (*Id.* at 8). Appellant emphasizes that police did not see any evidence of the shooting in plain view, and police eventually found the contraband at issue inside a suitcase recovered from the trunk of the vehicle.  As such, Appellant also asserts that it was not "immediately apparent" that the vehicle amounted to "incriminating evidence." (*See id.* at 10).

Further, Appellant argues that exigent circumstances did not support the warrantless seizure of the vehicle.  Appellant acknowledges that police were concerned about the "inherent mobility" of the vehicle and "the likelihood that evidence could be destroyed." (*Id.* at 9).  Appellant insists, however, that these concerns were mitigated by the fact that Appellant could not have moved the vehicle "while in the company of the investigating detectives." (*Id.* at 10).  Under these circumstances, Appellant contends "there was no valid reason to seize the vehicle without a warrant," which police could have obtained while questioning Appellant. (*Id.*)  Appellant concludes that police

---

[3] The trial court opinion sets forth the court's conclusions that 1) police lawfully seized the vehicle because it was in plain view; 2) an officer surveilling the vehicle until a warrant was secured would have had the same effect as a seizure; and 3) the police ultimately conducted a legal search of the vehicle pursuant to a valid warrant. (*See* Suppression Court Opinion at 5-10).

- 5 -

conducted an illegal seizure, which rendered the ensuing search unlawful. We disagree.

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015)).

"Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Heidelberg*, 267 A.3d 492, 502 (Pa.Super. 2021) (*en banc*), *appeal denied*, ___ Pa. ___, 279 A.3d 38 (2022) (quoting *Commonwealth v. Newsome*,

170 A.3d 1151, 1154 (Pa.Super. 2017)). "As a general rule, 'a warrant stating probable cause is required before a police officer may search for or seize evidence.'" *Id.* (quoting **Commonwealth v. Anderson**, 40 A.3d 1245, 1248 (Pa.Super. 2012)). "To effectuate the rights guaranteed under the Fourth Amendment, in the early part of the last century, the United States Supreme Court adopted the exclusionary rule, which bars the use of evidence obtained through an illegal search and seizure." **Commonwealth v. Arter**, 637 Pa. 541, 547-48, 151 A.3d 149, 153 (2016). "The exclusionary rule also applies to any evidence discovered as a result of the original illegal police conduct; such evidence is termed 'fruit of the poisonous tree.'" **Commonwealth v. Williams**, 2 A.3d 611, 619 (Pa.Super. 2010) (*en banc*), *appeal denied*, 610 Pa. 585, 19 A.3d 1051 (2011).

Nevertheless, "the exclusionary rule does not prevent the introduction of evidence that is 'gained from an independent source,' but rather applies only to 'knowledge gained by the Government's own wrong.'" **Id.** (quoting **Wong Sun v. United States**, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, ___ (1963)).

> The Supreme Court in **Wong Sun** noted that evidence is admissible if the "connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint." The Supreme Court ruled: "We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come

- 7 -

at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  Thus, where evidence was obtained through constitutional police action unconnected with the illegal police conduct, it is "purged" of "taint" based upon its derivation from an independent source.

*Id.* (internal citations omitted).

In *Williams, supra*, this Court applied the independent source doctrine and concluded that the warrantless seizure of a vehicle did not require the suppression of contraband recovered from inside the vehicle.  Specifically, *Williams* involved a scenario where a veteran police officer received information from a reliable confidential informant.  The informant told the officer that the defendant was dealing drugs out of a black Ford Expedition on the 300 block of Myrtle Street in Erie.  The officer 1) knew the defendant from prior contacts; 2) was aware that the defendant drove a black Expedition; and 3) had received other complaints about the defendant's drug-related activities on the block at issue.

Immediately after hearing from the informant, the officer drove to the 300 block of Myrtle Street in an unmarked police cruiser.  The officer saw the defendant inside the black Expedition, drove past the defendant's vehicle, and parked one and one-half blocks away.  The officer conducted surveillance for twenty minutes.  During that time, the officer watched three individuals approach the Expedition and place their hands inside the vehicle.  The officer knew that this type of behavior was consistent with drug transactions.

After the transactions, the defendant drove away.  The officer followed

the defendant. As the defendant pulled into his driveway, the officer pulled up behind him. The officer approached the defendant, conducted a pat down, and discovered $600.00 in cash in the defendant's pocket. The officer handcuffed the defendant and transported him to the police station. Thereafter, another officer drove the Expedition to a police garage for a dog to conduct a drug sniff of the vehicle. While the Expedition was driven to the garage, no search was conducted, and no evidence was recovered. During the drug sniff, the dog made a positive indication on the driver's side of the Expedition. The officer shined a flashlight into the vehicle and saw a plastic baggie protruding from the roof liner. At that point, the officer decided to obtain a search warrant for the vehicle. The subsequent search yielded drugs and additional paraphernalia.

The defendant filed a suppression motion, which the court denied. Following trial, the defendant was convicted of various drug offenses. On appeal, the defendant claimed that "the warrantless seizure of the Expedition requires suppression of the evidence seized therefrom during execution of the warrant." *Id.* at 617. In affirming the suppression court's ruling, this Court relied upon the independent source doctrine:

> [P]olice had probable cause to believe that [the defendant] was dealing drugs from the Expedition, and, therefore, that it contained contraband. They drove the vehicle from the driveway to the police station to conduct the canine sniff and wait for the warrant. Police did not search the Expedition while driving to the police station, and no information gleaned during that ride was utilized to support the warrant. Thus, the warrantless seizure of the vehicle did not result in

> the discovery of a scintilla of evidence used by the government in any aspect of this prosecution.
>
> The information supporting the canine sniff and the warrant was not derived to any extent from the singular act of taking the Expedition from the driveway to the police station to secure it. Rather, those two searches were based upon facts learned prior to the act of transporting the vehicle. Thus, the independent source doctrine … is directly applicable.

*Id.* at 620-21.

Instantly, the suppression court opinion includes factual findings and conclusions of law. Among other things, the court determined that the police possessed probable cause to believe that Appellant's vehicle was involved in the May 5, 2021 shooting:

> Castle Club Apartments' video surveillance showed the Altima arriving at the scene of the shooting moments before it occurred. An individual exited the vehicle and walked toward the building where shots were fired, returned to the Altima, and subsequently fled the scene. Further, a confidential informant reported that Appellant was thought to be the shooter. Finally, the Altima seen on video surveillance was the same Altima that Appellant was known to drive, which was registered to his wife….

(Suppression Court Opinion at 6). Our review leads us to conclude that the suppression court's factual findings are supported by the record, and its legal conclusion is correct. *See Ford, supra*. *See also Commonwealth v. Goldsborough*, 31 A.3d 299, 306 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (reiterating that probable cause "is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy

information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed … a crime").

Although the police effectuated a warrantless seizure of Appellant's vehicle by towing it to the Falls Township Police Department, the police did not conduct a search of the vehicle until they obtained the search warrant. (*See* N.T. Suppression Hearing, 6/16/22, at 33).  Additionally, the affidavit of probable cause submitted with the application for the search warrant was based upon facts that the police learned prior to the seizure of the Altima. (*See* Commonwealth's Suppression Exhibit CS-2, Affidavit of Probable Cause, dated 6/4/21, at 1-4).  Under these circumstances, the independent source doctrine applies to the instant case.  *See Williams, supra*.  Thus, we cannot say that the court erred in denying Appellant's suppression motion, and we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2023

- 11 -