J-A05024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| DWANE HOLBROOK | : | |
| Appellant | : | No. 428 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 18, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002626-2022

BEFORE: DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:           **FILED JULY 03, 2024**

Appellant, Dwane Holbrook, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for persons not to possess firearms, carrying a firearm without a license, and carrying a firearm on a public street in Philadelphia.[1] We affirm.

The relevant facts and procedural history of this case are as follows.

> Officer Bascomb testified that on March 9, 2022, he was on routine patrol with his partner in the 18th Police District, where he had been assigned for four years. The officers were patrolling in the vicinity of 56th and Montrose Streets, an area where police often are summoned for shootings. At approximately 9:50 p.m., they were driving behind [Appellant's] vehicle, traveling northbound on 56th Street, when [Appellant] made a left turn onto the 5600 block of Montrose Street. Officer Bascomb testified that when he and his partner got to Montrose Street—which is a narrow, one-way, one-lane street with parking only on the right-

_____

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

hand side—he saw [Appellant] driving on the left sidewalk before coming to a stop. [Appellant's] vehicle was protruding into the street and blocking traffic. At that point, based on multiple violations of the traffic code, Officer Bascomb activated his overhead lights to initiate a vehicle investigation.

Officer Bascomb testified that he approached the vehicle and encountered [Appellant] in the driver's seat, and a female in the passenger seat. He asked for a driver's license, vehicle registration and proof of insurance. While [Appellant] was producing the requested documents, Officer Bascomb returned to his vehicle to alert his partner that he saw a bulge in the front left pocket of [Appellant's] hoodie. The officers returned to [Appellant's] vehicle, where [Appellant] and the female passenger produced their licenses and vehicle documentation. Officer Bascomb "asked if anybody in the vehicle had a permit to carry, [and] if there [were] any firearms in the vehicle," to which "they both stated no." Officer Bascomb testified to the ensuing events as follows:

> I then asked [Appellant] what's that in your left hoodie pocket. [Appellant] with his left hand put his hand inside his pocket. At that point, I was able to observe a black firearm.
>
> I then told [Appellant] not to reach in there. He complied. We were able to remove [Appellant] from the vehicle. My partner recovered the firearm from his left side hoodie pocket, and we placed [Appellant] in custody.

(Trial Court Opinion, filed 4/24/23, at 2-3) (record citations omitted).

On April 5, 2022, the Commonwealth filed a criminal information charging Appellant with various firearms offenses. Appellant subsequently filed an omnibus pretrial motion, which included a request to suppress the evidence recovered by the officers. The court held a suppression hearing on October 14, 2022, and Officer Bascomb was the only witness to testify. On

November 17, 2022, the court denied Appellant's suppression motion. Appellant immediately proceeded to a stipulated bench trial, and the court found him guilty of the firearms offenses. On January 18, 2023, the court sentenced Appellant to an aggregate term of two and one-half (2½) to five (5) years' imprisonment, plus seven (7) years of probation.

Appellant timely filed a notice of appeal on February 15, 2023. On February 16, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement. Following an extension, Appellant filed his Rule 1925(b) statement on March 23, 2023.

Appellant now raises one issue on appeal:

> Should the trial court have suppressed a firearm where police stopped Appellant for a traffic violation and extended the time required to complete the mission of the traffic stop by launching an investigation into an innocuous bulge in Appellant's pocket and the contents of the car absent reasonable suspicion of a crime?

(Appellant's Brief at 2).

On appeal, Appellant acknowledges that his interaction with the police began as a lawful traffic stop. Appellant asserts, however, that Officer Bascomb abandoned his investigation of the underlying traffic violation when "the officer embarked upon questioning [Appellant] about whether there were any firearms and drugs in the car, whether [Appellant] had a license to carry a firearm and what was in [Appellant's] pocket." (*Id.* at 11). Appellant emphasizes that this questioning "effectively ends the traffic stop and begins an independent investigative detention." (*Id.* at 12). To the extent the

- 3 -

suppression court found that the officer legitimately questioned Appellant based on concerns for officer safety, Appellant insists that "the officer's line of questioning went far beyond an inquiry related to officer safety." (*Id.* at 16). Further, Appellant alleges that the officers effectuated an illegal seizure based solely on the "innocuous bulge in [Appellant's] pocket," which did not create reasonable suspicion. (*Id.* at 18). On this record, Appellant concludes that the court erred in denying his suppression motion. We disagree.

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018).

Contacts between the police and citizenry fall within three general

- 4 -

classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Bryant**, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting **Commonwealth v. Phinn**, 761 A.2d 176, 181 (Pa.Super. 2000)).

An "investigative detention" is interchangeably labeled as a "stop and frisk" or a "**Terry** stop." **Commonwealth v. Brame**, 239 A.3d 1119, 1129 (Pa.Super. 2020), *appeal denied*, 666 Pa. 240, 251 A.3d 771 (2021).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> \* \* \*
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

**Commonwealth v. Jones**, 874 A.2d 108, 116 (Pa.Super. 2005) (internal

citations omitted).

To ensure officers' safety during a traffic stop, police may order both drivers and passengers to exit the vehicle, even without reasonable suspicion that criminal activity is afoot. **Commonwealth v. Malloy**, 257 A.3d 142, 150 (Pa.Super. 2021). During a traffic stop, the officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." **Commonwealth v. Wright**, 224 A.3d 1104, 1109 (Pa.Super. 2019), *appeal denied*, 661 Pa. 533, 237 A.3d 393 (2020). "Further, 'if there is a legitimate stop for a traffic violation … additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions.'" **Id.** (quoting **Commonwealth v. Chase**, 599 Pa. 80, 93 n.5, 960 A.2d 108, 115 n.5 (2008)).

Instantly, the suppression court evaluated Appellant's arguments and determined that the officer conducted a legal seizure:

> Upon approaching [Appellant's] vehicle to obtain his driving credentials, Officer Bascomb immediately observed a bulge in [Appellant's] left hoodie pocket. The officer asked both occupants if they had a permit to carry a firearm and whether there were any firearms in the vehicle—to which they both responded in the negative. Officer Bascomb then asked [Appellant] about the bulge in his left pocket; when [Appellant] reached into his pocket, Officer Bascomb observed a black firearm. At that point, having already determined that [Appellant] did not have a permit to carry, police had probable cause to seize the weapon and arrest Appellant. As such, the [c]ourt did not err in denying [Appellant's] motion.

[Appellant] nonetheless contends that police "illegally extended the traffic stop without reasonable suspicion" in violation of **Rodriguez v. United States**, 575 U.S. 348 (2015). [Appellant's] reliance on **Rodriguez** is wholly misplaced.

\* \* \*

Here, ... Officer Bascomb did not "extend an otherwise-completed traffic stop," let alone for the purpose of conducting a dog sniff. Rather, he was in the midst of a valid traffic stop when he observed the firearm from a lawful vantage point, after [he] already determined that no one in the vehicle had a license to carry.

\* \* \*

Further, Officer Bascomb's inquiry regarding the bulge in [Appellant's] pocket was a legitimate precaution for his and his partner's safety during the traffic stop. As such, for multiple reasons, **Rodriguez** does not control here.

Finally, at the suppression hearing, [Appellant] also invoked [**Malloy, supra**] for the proposition that possession of a firearm during a traffic stop does not give rise to reasonable suspicion to extend a traffic stop to investigate whether the suspect has a concealed weapons permit. Here, however, unlike **Malloy**, police: (a) did not extend the traffic stop for further investigation; and (b) already had established that no one in the vehicle had a permit to carry a firearm. Thus, at the time Officer Bascomb observed the firearm in this case, he was authorized to seize the weapon and arrest [Appellant].

(Trial Court Opinion at 6-9) (internal footnote and some citations omitted).

Our review of the record supports these conclusions.

Officer Bascomb testified that he observed a bulge in the "[f]ront left side" pocket of Appellant's "gray sweatshirt" when he first approached the vehicle. (N.T. Suppression Hearing, 10/14/22, at 10). Officer Bascomb

returned to his patrol vehicle to tell his partner about the bulge, then both officers approached Appellant's vehicle. Appellant and the passenger produced their licenses, and Officer Bascomb "also asked if anybody in the vehicle had a permit to carry, if there [were] any firearms in vehicle. And they both stated no." (*Id.*) Officer Bascomb "then asked [Appellant] what's that in your left hoodie pocket. [Appellant] with his left hand put his hand inside his pocket. At that point, I was able to observe a black firearm." (*Id.*)

On this record, reasonable suspicion of new criminal activity quickly arose before the initial traffic stop's purpose had been fulfilled. *See Wright, supra*. Specifically: 1) Officer Bascomb observed the bulge in Appellant's pocket before Appellant and the passenger had even produced their driver's licenses; 2) after producing their driver's licenses, Appellant and the passenger denied having firearms or licenses to carry firearms; and 3) Officer Bascomb saw the firearm when Appellant reached into his pocket during this conversation. Under these circumstances, Officer Bascomb's observations led him to the reasonable conclusion that Appellant was involved in some type of criminal activity beyond the initial purpose of the traffic stop. *See Jones, supra*. Accordingly, Appellant is not entitled to relief on his suppression claim, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/3/2024