J-S38022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LATRONN J. REED | : | |
| | : | |
| Appellant | : | No. 833 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 5, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000447-2022

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.: **FILED DECEMBER 16, 2025**

Appellant, Latronn J. Reed,[1] appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for persons not to possess firearms, carrying a firearm without a license, and carrying firearms on public streets in Philadelphia.[2] We affirm.

The relevant facts and procedural history of this case are as follows. On October 17, 2021, at approximately 6:10 p.m., Philadelphia Police Officer William Phillips was on patrol as part of "an overtime detail" on the 2100 block of Lehigh Avenue. (*See* N.T. Suppression Hearing, 6/1/23, at 8). The officer

---

[1] Throughout the certified record, Appellant's last name appears as "Red." At the suppression hearing, however, Appellant confirmed that his last name is "Reed." (*See* N.T. Suppression Hearing, 6/1/23, at 4).

[2] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

described this area as being "inundated with a lot of violent crime, narcotic sales, and gun violence," and the overtime detail was meant to combat the surge in crime. (*Id.* at 8). While traveling eastbound on Lehigh Avenue, Officer Phillips and his partner, Officer Stroman, "were behind a vehicle and a SEPTA bus." (*Id.* at 9). The officers "observed another vehicle, a gray Chevy Impala," veer into "the opposite flowing lane of traffic to go around the [bus] while the [bus] was offloading and loading passengers." (*Id.* at 9-10). The officers identified this passing maneuver as a violation of the Motor Vehicle Code,[3] and they initiated a traffic stop.

The Impala, which contained two occupants, turned off onto a side street and came to a stop. Officer Phillips approached the driver, obtained the driver's license and vehicle registration, and confirmed that the driver was the registered owner of the vehicle. Officer Stroman approached the front-seat passenger, who was later identified as Appellant. At the time of the stop, however, Appellant could not produce any identification cards. Although Appellant provided his name and date of birth, Officer Stroman could not verify Appellant's identity through a law enforcement database. Nevertheless, the

_____

[3] "No vehicle shall be driven to the left side of the center or marked center line of the roadway in overtaking and passing another vehicle proceeding in the same direction unless the left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit the overtaking and passing to be completely made without interfering with the operation of any vehicle approaching from the opposite direction or any vehicle overtaken." 75 Pa.C.S.A. § 3305.

- 2 -

officer's search of the database did reveal that the driver's "license was not valid." (*Id.* at 12).

Officer Stroman "reengaged" with Appellant "to try to obtain further information to identify him." (*Id.*) Appellant then informed the officer that he was from South Carolina. The officers believed that Appellant's residency in another state might have inhibited their ability to confirm his identity. As Officer Phillips explained at the suppression hearing:

> [W]e ran our information through the state network and also national network.
>
> How states enter their information, it is state to state. So you may need specific requirements to enter in the computer. So I may enter a name for somebody who's out of state. And if I just give name, date of birth, and state, that may not be enough. You may need the actual operator's license. You may need something else.

(*Id.* at 15-16). Consequently, Officer Stroman asked Appellant to exit the vehicle. The officer wanted to ascertain "if there was any more information that can be given to evaluate his identification." (*Id.* at 17). At the same time, Officer Phillips "did a quick safety sweep of the passenger foot well and underneath the seat to make sure there wasn't anything illegal or any weapons." (*Id.*) During the sweep, Officer Phillips recovered a loaded firearm from underneath the front passenger seat. The officers arrested Appellant, and a search of his person revealed an additional round of live ammunition inside Appellant's pants pocket.

On January 28, 2022, the Commonwealth filed a criminal information

charging Appellant with multiple firearms offenses. On February 17, 2022, Appellant filed an omnibus pretrial motion seeking the suppression of all physical evidence obtained from the traffic stop. In his motion, Appellant asserted that the evidence was unlawfully obtained in violation of his constitutional rights. The court conducted a suppression hearing on June 1, 2023. At the conclusion of the hearing, the court denied the suppression motion.[4]

Appellant proceeded to a bench trial on December 9, 2024. Thereafter, the court found Appellant guilty of persons not to possess firearms, carrying a firearm without a license, and carrying firearms on public streets in Philadelphia. On March 5, 2025, the court sentenced Appellant to an aggregate term of eleven and one-half (11½) to twenty-three (23) months' incarceration, followed by four (4) years of probation. Appellant did not file post-sentence motions.

_____

[4] A suppression court must enter findings of fact and conclusions of law on the record at the conclusion of a suppression hearing. **See** Pa.R.Crim.P. 581(I). Here, the court denied Appellant's motion at the conclusion of the suppression hearing without explicitly providing findings of fact or conclusions of law. (**See** N.T. Suppression Hearing at 47-50). Nevertheless, the court's Pa.R.A.P. 1925(a) opinion provides the rationale for its suppression ruling. Consequently, we rely on the Rule 1925(a) opinion to conduct our review of this matter. **See Commonwealth v. Rivera**, 311 A.3d 1160, 1162 n.2 (Pa.Super. 2024), *appeal denied*, ___ Pa. ___, 325 A.3d 1024 (2024) (stating: "Although a [Rule] 1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing, appellate review may be possible based on facts in an opinion in support of an order on appeal").

Appellant timely filed a notice of appeal on March 28, 2025. On April 2, 2025, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on April 3, 2025.

Appellant now raises one issue for this Court's review:

> Did the trial court err by denying [Appellant's] motion to suppress the seizure of physical evidence (*i.e.*, the firearm)?

(Appellant's Brief at 6).

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018).

On appeal, Appellant acknowledges that it is "not unreasonable for an

officer to request that passengers in a lawfully stopped car exit the vehicle so that the safety of the officer is, if not insured, at least better protected." (Appellant's Brief at 13). Appellant insists, however, that once the officers had removed him from the vehicle, the officer's safety was no longer in jeopardy. Appellant contends that the officers did not conduct a pat down search of his person, and "the officers certainly did not believe he was a danger to them." (*Id.* at 14). Appellant posits that "any 'danger' the officers might have presumed related to the vehicle was nullified once [Appellant] had been removed from it." (*Id.*) Moreover, Appellant emphasizes that there is nothing in the record to indicate that the officers obtained consent from the driver to search the vehicle.[5] Appellant maintains that once the officers removed him from the vehicle, the officers should have allowed him to leave the scene because the purpose of the traffic stop had been effectuated. Based upon the foregoing, Appellant concludes the court should have granted his suppression motion. We disagree.

The United States Supreme Court has determined that, under the Fourth

---

[5] Among other things, the court specifically found that the driver provided consent for the search of his vehicle. (*See* Suppression Court Opinion, filed 6/6/25, at 2) (citing N.T. Suppression Hearing at 24). Our review of the suppression hearing transcript reveals that the court appears to rely on body camera footage played at the hearing to support this finding. Although this footage was not included in the certified record on appeal, its omission does not hinder this Court's ability to conduct effective appellate review. As we discuss *infra*, the record provides an alternative basis for this Court to affirm the suppression court's ruling.

Amendment, the police may conduct a limited search of the passenger compartment of a vehicle under the following circumstances:

> Our past cases indicate … that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. If a suspect is "dangerous," he is no less dangerous simply because he is not arrested.

*Michigan v. Long*, 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 3480-81, 77 L.Ed.2d 1202, ___ (1983) (internal citations, footnote, and most quotation marks omitted). "Accordingly, 'we look at the totality of the circumstances facing an officer when we examine whether that officer came to a reasonable suspicion to search for a weapon.'" *Commonwealth v. Watley*, 153 A.3d 1034, 1045 (Pa.Super. 2016), *appeal denied*, 641 Pa. 750, 169 A.3d 574 (2017) (quoting *Commonwealth v. Tuggles*, 58 A.3d 840, 843 (Pa.Super. 2012)). Further, to ensure officers' safety during a traffic stop, police may order both drivers and passengers to exit the vehicle, even without reasonable suspicion that criminal activity is afoot. *Commonwealth v. Malloy*, 257 A.3d

142, 150 (Pa.Super. 2021).

Instantly, the suppression court provided the following explanation for its finding that the protective sweep was justified by officer safety concerns:

> After [Appellant] exited the vehicle, Officer Phillips conducted a limited protective sweep of the passenger-side floorboard, where [Appellant] had been seated. During this sweep, the officer recovered a loaded firearm concealed beneath the seat. The sweep was confined in scope and performed as a precautionary measure for officer safety— not as a search for evidence.
>
> Although [Appellant] was cooperative, he was also unidentified, lacked physical ID, and had recently occupied the area searched. The officers were unable to confirm whether he had outstanding warrants, prior arrests, or posed a threat. These circumstances—combined with the stop's location in an area known for gun violence—provided a reasonable basis to ensure the area was secure before returning [Appellant] to the vehicle.[6]

_____

[6] We are mindful of our Supreme Court's recent decision in **Commonwealth v. Lewis**, ____ Pa. ____, 343 A.3d 1016 (2025), which provided the factors for assessing whether an investigatory stop occurred in a high-crime area. Specifically, the Court held

> that when assessing whether an area is high in crime, a suppression court may consider a variety of factors, including, but not limited to: the geographic scope of the high-crime area; the nexus between the type of crime the area is known for and the type of crime suspected on the day of the stop; the officer's level of familiarity with the area; the recency of the officer's information; empirical data known to the officer; and the assignment of specialized police units targeting high-crime areas.

**Id.** at ____, 343 A.3d at 1036. Here, we agree with the suppression court's conclusion that the Commonwealth met its burden of proving that the traffic stop at issue occurred in a high-crime area. We reiterate Officer Phillips' testimony that this portion of Lehigh Avenue was "inundated with a lot of

*(Footnote Continued Next Page)*

(Suppression Court Opinion at 5). Under the applicable standard of review, the suppression court properly applied the relevant law to the instant facts. **See Ford, supra**.

To the extent that Appellant asserts that he no longer posed a threat to the officers once he was outside the vehicle, Officer Phillips' testimony established that he initially intended to allow Appellant to reenter the vehicle:

> Well, once he was—once we removed, the passenger out the vehicle, we made sure that there isn't anything that could harm the officer when we placed that person back in the vehicle.

(N.T. Suppression Hearing at 17). Moreover, Officer Phillips confirmed that the driver was still inside the car when the officer conducted the sweep. (**See id.** at 24).

Although Appellant exited the vehicle upon the officer's request, this did not eliminate the danger to the officers where: 1) the stop occurred in a high-crime area, 2) the officers could not verify Appellant's identity; and 3) the driver continued to have access to the vehicle's passenger compartment. Moreover, though Appellant complied with the officers' directives throughout the encounter, "cooperation with police does not erase an otherwise valid belief that a defendant may have access to a gun." **See Watley, supra** at

---

violent crime, narcotic sales, and gun violence," which necessitated the officer working an "overtime detail" on the date in question. (N.T. Suppression Hearing at 8).

1045 n.9 (quoting **Tuggles, supra** at 845). Because the record supported the suppression court's conclusions, Appellant is not entitled to relief. **See Ford, supra**. Thus, the court did not err in denying Appellant's suppression motion.[7] Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2025

_____

[7] Regarding Appellant's conviction for carrying firearms on public streets in Philadelphia, we must acknowledge this Court's recent decision in **Commonwealth v. Sumpter**, 340 A.3d 977 (Pa.Super. 2025), which deemed this statute unconstitutional on an equal protection basis as applied to the appellant in that case. **Sumpter**, however, analyzed the constitutionality of Section 6108 insofar as the statute prohibits the unlicensed **open** carry of firearms on public streets and public property in the city of Philadelphia. Here, the record makes clear that Appellant's firearm was concealed underneath the passenger seat of the vehicle. (**See** N.T. Suppression Hearing at 17, 36). The criminal complaint confirmed that the firearm was "concealed … in a motor vehicle[.]" (Complaint, dated 10/18/21). Moreover, Appellant's brief makes no argument regarding the constitutionality of the statute at issue. **See Commonwealth v. Spone**, 305 A.3d 602, 609 (Pa.Super. 2023) (reiterating that issues of constitutional dimension cannot be raised for first time on appeal). Based upon the foregoing, **Sumpter** affords no relief for Appellant.