**[J-51-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**


| | |
|---|---|
| IN RE: NOMINATION PETITION OF | : No. 35 MAP 2014 |
| MICHAEL W. BEYER, CANDIDATE FOR | : |
| THE DEMOCRATIC NOMINATION FOR | : Appeal from the order of the |
| THE OFFICE OF REPRESENTATIVE IN | : Commonwealth Court at No. 150 MD 2014, |
| THE GENERAL ASSEMBLY FOR THE | : dated April 17th 2014. |
| 131ST LEGISLATIVE DISTRICT | : |
| | : SUBMITTED:   April 24, 2014 |
| | : |
| APPEAL OF: DAVID EISENHAUER AND | : |
| LINDA EISENHAUER | : |


**OPINION**

**MR. JUSTICE STEVENS**                    **DECIDED:   May 5, 2014**
                                     **OPINION FILED:   April 28, 2015**

In response to the pressing time demands of this primary election appeal, we entered a *per curiam* order on an expedited basis vacating the order of the Commonwealth Court and directing that Appellee Michael W. Beyer's name be stricken from the primary ballot for the Democratic Party nomination for the Office of Representative in the General Assembly for the 131st Legislative District. See In re Nomination Petition of Beyer, 91 A.3d 1231 (Pa. 2014). In the *per curiam* order, we stated that an opinion would follow, and we now augment the brief explanation appearing in our original mandate.

The Election Code, 25 P.S. § 2600 *et seq*., vests discretion in courts to amend a material defect apparent on the face of nomination petitions unless the defect manifests the candidate's intent to mislead electors. See In re Nomination Petitions of McIntyre, 778 A.2d 746, 751 (Pa. Commw. Ct. 2001) *aff'd sub nom.* In re McIntyre, 770 A.2d 326 (Pa.

2001) (holding wrongful intent precludes amendment). Here, Mr. Beyer circulated nomination petitions listing his present occupation as "lawyer" when he was a law school graduate neither authorized to practice law in any jurisdiction nor working with the law in any capacity. Deeming his description of occupation both materially defective and issued with the knowledge it could mislead electors as to his credentials for the office of lawmaker, we held the defect ineligible for amendment and precluded Mr. Beyer's access to the ballot.

The record reveals that Michael W. Beyer timely filed nomination petitions with the Department of State seeking placement of his name on the ballot for Democratic Nomination for the Office of Representative in the General Assembly for the 131st Legislative District. Appellant Objectors, qualified electors residing in the 131st Legislative District, filed in the Commonwealth Court a petition to set aside the nomination petition on grounds that Mr. Beyer intentionally misrepresented his occupation as "lawyer" on both his Statement of Financial Interests (SOFI) and nomination petitions.[1]

Judge Renée Cohn Jubelirer presided over the matter and conducted a hearing on April 11, 2014. At the hearing, Mr. Beyer confirmed he had graduated law school in May of 2013 but had yet to pass or even take any state's bar examination. Consequently, he was not licensed to practice law at the time he circulated his nomination petitions. He listed his occupation as "lawyer," he said, because he understood the definition of "lawyer" as found in the Oxford English Dictionary to include someone who studied the law. In addition, Mr. Beyer believed "occupation" meant "profession," and because he understood 'lawyer' to mean someone who studies the law, he considers his profession to be that of a lawyer." In re Nomination of Beyer, (Pa. Commw., 150 M.D. 2014, filed April

---

[1] Section 2912(b) of the Election Code provides, in pertinent part, that a candidate is required to specify his or her "profession, business, or occupation" on all nomination papers. 25.P.S. § 2912(b).

17, 2014) at 3. He therefore thought it fair comment to describe his profession or occupation as "lawyer" on his nomination petition.[2]

Mr. Beyer testified that he never meant to imply he was a licensed, practicing lawyer, and he thus denied possessing the intent to deceive the electorate with his statement of occupation. In support of this testimony, Mr. Beyer alluded to a newspaper article that reported he was a law school graduate without suggesting he was licensed or practicing. In no personal dealing did he claim licensure or any other eligibility to practice law or represent clients in Pennsylvania, Mr. Beyer further testified. When electors asked him about his listed occupation, Mr. Beyer elaborated appropriately, he contended.

Drawing extensively from the rationale employed in a single-judge Commonwealth Court decision in In re Nomination Petition of Guzzardi (Pa. Commw., No. 158 M.D. 2014, filed April 15, 2014), a decision we subsequently reversed on unrelated grounds, *see infra*, the Honorable Renée Cohn Jubelirer determined that Mr. Beyer's statement of occupation did not amount to a defect on the face of the petition. The term "lawyer," she held, fairly includes those learned in the law though not licensed to practice the law, and the term "occupation" includes "one's profession, particularly one that requires extensive training, regardless of whether one is actually active in that profession." Beyer, 150 M.D. 2014 at 3 (quoting Guzzardi, supra at 22).

Judge Cohn Jubelirer further opined that even if the statement of occupation were a misrepresentation, the resultant defect was not material to the nomination process

---

[2] Notable about candidate's activities at the time his petitions circulated is that he had not been engaged in the study of law since his graduation. There was no testimony that he was actively preparing for the bar examination, for he had not yet scheduled himself to take the bar, nor did he claim to be working with the law for a lawyer or a judge as a "nonlawyer assistant." See Pennsylvania Rules of Professional Conduct, Rule 5.3, *infra*. Instead, his only testimony relating to present occupation was that of a real estate consultant to his family, and even that claim was devoid of any indication that Mr. Beyer relied on or applied his legal training to impart legal advice in such endeavor.

because "[c]andidate credibly testified that he had no intention to deceive the electorate." Id. at 12.[3] Though she found that he likely used the title of "lawyer" to "enhance his stature with the electorate," she accepted his explanation that he believed his having studied law and graduated law school in the past, alone, entitled him to claim the occupation. Id. Further probative of intent, the opinion continued, was that Mr. Beyer "explained [his use of the title 'lawyer'] to an elector when the opportunity arose," and the newspaper article identifying him as a law school graduate without implying he was licensed to practice law. Id. at 12-13. Accordingly, Judge Cohn Jubelirer concluded that the evidence would have dispelled concerns of wrongful intent so as to permit amendment under sections 976 and 977 (described more fully, *infra*) of the Election Code had the court found a defect in the first place. This timely appeal to our direct appellate jurisdiction followed.

Appellant Objectors contend the Commonwealth Court erred in failing to find that Mr. Beyer's self-designation as a lawyer-by-occupation represented a material defect borne of the intent to mislead the electorate. In reviewing an order adjudicating challenges to a nomination petition, our standard of review permits reversal only where the findings of fact are unsupported by substantial evidence, where there was an abuse of

---

[3] Our courts have recognized that a candidate's intent to deceive electors by means of an otherwise immaterial defect on the face of the petition is in and of itself sufficient to set aside the petition under section 976 of the Election Code, 25 P.S. § 2936. See McIntyre, 778 A.2d at 751. This is so because the wrongful intent to deceive the electorate is always material to the election process and should result in forfeit of one's access to amendment. But, strictly speaking, the "materiality" of a defect for purposes of sections 976 and 977 (25 P.S. § 2937) extends beyond intentional acts to include any defect that may affect an elector's nomination decision, *i.e.*, have the propensity to mislead an elector to nominate the candidate. We have recognized that section 977 permits a court, in its discretion, to amend material defects made without the intention to mislead. The Commonwealth Court below, therefore, erroneously limited the scope of "materiality" when it reasoned that the defect in question was not material to the nomination process in the absence of the candidate's intent to deceive.

discretion, or where an error of law was committed. In re Nomination Petition of Flaherty, 770 A.2d 327, 331 (Pa. 2001). Moreover, in reviewing election issues, we must consider the longstanding and overriding policy in our Commonwealth to protect the elective franchise. In re Nomination Petition of Driscoll, 847 A.2d 44 (Pa. 2004). In promoting that policy, this Court has made clear that the Election Code must "be liberally construed to protect a candidate's right to run for office and the voters' right to elect the candidate of their choice." Id. at 49. Nevertheless, the policy of liberally reading the Code cannot be distorted to emasculate the requirements necessary to assure legitimate nomination papers. In re Farnese, 17 A.3d 375 (Pa. 2011); McIntyre, 778 A.2d at 751.

Provisions of the Election Code relating to the form of nominating petitions and the accompanying affidavits are not mere technicalities, but are necessary measures to prevent fraud and to preserve the integrity of the election process. Farnese, supra. A party alleging defects in a nominating petition has the burden of proving such defects, as nomination petitions are presumed to be valid. In re Nomination Petition of Gales, 54 A.3d 855 (Pa. 2012).

We address first whether Mr. Beyer's statement of occupation/profession represented a defect apparent on the face of his petition.[4] As the General Assembly did

---

[4] Implicit in longstanding jurisprudence pertaining to the statutory requisite of facially apparent errors or defects is an expansive interpretation comprising misrepresentations both evident on the face of the petition and ascertainable only through evidence presented at a Section 977 hearing. Though an erroneous listing of the candidate's primary residence, for example, was not apparent from simply reading the nomination petition, we nevertheless deemed it a defect eligible for amendment under the Section 976 and 977 scheme. See, e.g., Driscoll, 847 A.2d at 51-54 (Pa. 2004). See also In re Nomination Petition of Hacker, 728 A.2d 1033, 1035 (Pa. Commw. 1999) for similar treatment in the Commonwealth Court. It is by this convention that we assessed whether Mr. Beyer's listed occupation--the accuracy of which was likewise not plain on the face of the petition itself--represented a defect to be either set aside or amended.

not define either "occupation" or "profession" as those terms appear in the Election Code, we set out to construe them "according to the rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a).

One way to ascertain the plain meaning and ordinary usage of terms is by reference to a dictionary definition. Commonwealth v. Hart, 28 A.3d 898, 909 (Pa. 2011). As noted by the court below, the Oxford English Dictionary defines a "lawyer" as "[a] person who practices or studies law; an attorney or a counselor." The same dictionary, however, defines a "profession" as "[a] paid occupation, especially one that involves prolonged training and a formal qualification," and assigns a principal definition to "occupation" as "[a] job or a profession." A "job," in turn is defined as "[a] paid position of regular employment." In accordance with these definitions,[5] the "occupation or profession of lawyer" for purposes of a nomination petition would comprise not only completion of prolonged training in law school but also acquisition of a formal qualification to practice law, which, in this Commonwealth, entails receiving a license to practice.

Formal reference sources discussing the scope of the occupation or profession of lawyer are scarce, but a survey of Pennsylvania's Rules of Professional Conduct[6] shows they presuppose a "lawyer," as that term is used therein, to be one licensed to practice

---

[5] These definitions are quite similar to those the court below referenced:

> The [Commonwealth Court in Guzzardi] observed that the definition of "occupation" includes one's profession or vocation (citing Webster's Third International Dictionary 1560 (2002)). [It] further observed that "profession" is defined as "'[a] vocation requiring advanced education and training; esp., one of the three traditional learned professions--law, medicine and the ministry.'" (quoting Black's Law Dictionary 1329 (9th ed. 2009)).

In re Beyer, supra at 11.

[6] 204 Pa. Code § 81.4 et seq.

law. This point is perhaps best exemplified in Rule 5.3, "Responsibilities Regarding Nonlawyer Assistance," which addresses the responsibilities assumed by lawyers who employ or retain "nonlawyer assistance" in their practices. Insightful for our purposes is that Rule 5.3 designates law students as "nonlawyers," regardless of their learned status and years of intense legal training. Indeed, no rule of professional conduct promulgated by this Court prescribing the conduct, duties, or responsibilities of "lawyers" includes a provision devoted to law school students or graduates who have yet to receive their formal license to practice.

During the hearing below, evidence of informal attitudes or common understandings was likewise scarce, but Mr. Beyer's own testimony describing his interactions with electors lent insight into what he believed electors would expect of one claiming the occupation of lawyer. Specifically, his testimony revealed how electors' mere observation of his stated occupation prompted him in all candor to offer a virtual retreat from the statement.

> **Q:** You said people asked you -- some of the people when you were getting signatures asked you about what you listed, lawyer, correct?
>
> **A:** So, people would say -- you know, they would look at the petition, and they would say, "Hey I see you're a lawyer," and I would say, "Oh, you know, I haven't passed the bar yet, but I plan on taking it sometime in the next year."

N.T. 4/11/14 at 56. This response indicates Mr. Beyer, himself, readily differentiated a lawyer from a law school graduate yet to take the bar, and suggests he believed electors would likely hold the perception that being engaged in the present "occupation or

profession of lawyer" means actually working, or at least being eligible to work, as a lawyer in the ordinary course of one's professional life.[7]

In this respect, former Chief Justice Castille's concurring opinion in In Re: Nomination Petition of Guzzardi, 99 A.3d 381 (Pa. 2014) is most salutary in delineating the difference between a lawyer and a prospective lawyer in the context of stating one's present occupation on a nomination petition. In Guzzardi, a gubernatorial candidate described his occupation as a "semi-retired businessman and lawyer" on his nomination petition and SOFI. In fact, though Mr. Guzzardi had practiced law for approximately forty years, he had assumed an inactive status for some period prior to and including the time he completed his petition. Of the five justices voting to strike Mr. Guzzardi's petition as fatally defective under the Public Official and Employee Ethics Act[8] because it was

---

[7] The unpublished opinion below cites the proposition expressed in the single-judge, Commonwealth Court decision in Guzzardi, supra, that, in delineating the difference between an "attorney" and a "lawyer," "the law student fresh from his school may well be termed a lawyer, but not an attorney." This quote was taken from a 1909 South Dakota decision. While reasonable minds may, over one century later, still grapple with distinctions between these two designations, there is apparent to this Court no modern tendency among either licensed attorneys or lay persons to accord law school students the "occupational" or "professional" status of lawyer unless and until such time as an appropriate sanctioning institution deems them eligible to practice. As for the 1999 federal district court decision from California cited below for the proposition that a lawyer is one who is "learned in the law" though not necessarily licensed to practice, see Freedom Trust v. Chubb, 38 F. Supp. 2d 1170, 1171 n.1 (C.D. Cal. 1999), that position was expressed briefly in *dicta* questioning the use of the term "lawyer" rather than "attorney" in the California Evidence Code's reference to the "lawyer-client privilege." Notably, the federal judge's commentary is thus at odds with a code enacted by a duly elected legislature, the California Business and Professional Code, defining a "lawyer" as a member of the state bar or admitted and eligible to practice in the highest court in any state, and the state court-promulgated California Rules of Professional Conduct 1-100(B)(3) in which the terms "attorney" and "lawyer" are synonymous with respect to requiring membership in the state bar.

[8] Act of October 15, 1998, P.L. 729, No. 93 (as amended 65 Pa.C.S. § 1101-1113).

untimely filed, two amplified that they would have also deemed it disqualifying for a candidate on inactive status with the Pennsylvania Bar to describe himself as a "semi-retired lawyer," a title that would lead the electorate to believe falsely that he still practiced law part-time.

In authoring his concurring statement, then-Chief Justice Castille incorporated his prior dissent in In re Rankin, 874 A.2d 1145, 1145-48 (Pa. 2005),[9] a case involving an inactive status candidate who listed her current occupation as "attorney/publisher":

> Words are a lawyer's standard in trade, and lawyers should be held to their meaning. A former occupation is not a current occupation. *A conditional or equivocal status is not an unequivocal one.* . . . What respondent viewed as an "explanation" of her conduct at the hearing below, properly understood, was a confession.

Rankin, Id at 1148 (Castille, J., dissenting) (citations omitted, emphasis added).

Applying this rationale to the "slightly different" facts of Guzzardi, the concurrence stated that "[a]s all Pennsylvania lawyers know, there is no 'semi-retired lawyer' status for members of the Pennsylvania Bar; attorneys are either active or inactive." Guzzardi, supra at 389 (Castille, J. concurring). There was no reason to expect, the concurrence concluded, that electors who signed Guzzardi's petition would have understood the meaning of the ambiguous term "semi-retired" as it related to one's status with the Pennsylvania Bar. Id.

This rationale speaks to the statutory purpose behind the requirement that a candidate supply for the benefit of electors his present occupation or profession, and it dovetails with our reasons cited above for declaring the petitions defective in the case *sub*

---

[9] In Rankin, this Court entered a one-sentence *per curiam* order declining to review the Petition for Allowance of Appeal raising an emergency election issue.

*judice*. Mr. Beyer described himself on the nominating petition as engaged in the present occupation of lawyer when his actual status was that of law school graduate not yet eligible to practice law. While the Oxford Dictionary may include within its definition of "lawyer" one who studies the law, a lawyer's professional or occupational role in society transcends his prior studies in law school. The term "lawyer" as used to describe one's occupation or profession for purposes of the Election Code is not an abstraction, and its scope should not expand so far as to include those who may wish to practice professionally in society but are not yet authorized to do so under our laws; a prospective occupation is not a current occupation. Accordingly, we deemed Mr. Beyer's statement of occupation appearing on his nomination petitions defective.

The defect, moreover, manifested both a material and knowing misrepresentation so as to preclude the possibility of amendment and require that the petitions be set aside. In so deciding, we reversed the order of the Commonwealth Court.

> According to section 977 of the Election Code, where a court finds that a nomination petition is defective pursuant to the provisions of section 976, the petition shall be set aside. *See id.* § 2937. Meanwhile, section 976 of the Election Code provides that "[n]o nomination petition, nomination paper or nomination certificate shall be permitted to be filed if ... it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits." *Id.* § 2936. Notably, section 977 also provides, however, that where "objections relate to material errors or defects apparent on the face of the nomination petition or paper, the court, after hearing, may, in its discretion, permit amendments within such time and upon such terms ... as the court may specify." *Id.* § 2937.

Driscoll, supra at 49. Under its own jurisprudence, the Commonwealth Court has deemed defects "material" when they have the potential to mislead an elector. See In re Ford, 994 A.2d 9 (Pa. Commw. 2010); In re Nomination Petition of Delle Donne, 779 A.2d 1 (Pa. Commw. 2001), aff'd 777 A.2d 412 (Pa. 2001). Only where a candidate intended

to mislead the electorate, however, is such a material misrepresentation grounds to preclude amendment of the nomination petition. See Driscoll, supra at 50-51(citing State Ethics Comm'n v. Baldwin, 445 A.2d 1208 (Pa. 1982)).

During the hearing below, Mr. Beyer asserted he did not intend to deceive the electorate about his occupation, and the Commonwealth Court credited that testimony. Our restrictive standard of review as cited above permits us to revisit this aspect of the court's decision if, *inter alia*, it is unsupported by substantial evidence. The court predicated its inference of the candidate's intent on two findings of fact: first, that Mr. Beyer sincerely believed he could properly call himself a lawyer, and, second, that he clarified any potentially misleading aspect to his petition when the opportunities to do so arose. We discern the first predicate regarding the candidate's beliefs to be beside the essential point of whether he knew his petition as worded would likely mislead electors, and we discredit the second as belied by the substantial evidence of record.

Even accepting as the Commonwealth Court did that Mr. Beyer sincerely believed there was a place for "one who studies the law" within the definition of a "lawyer," his own testimony revealed that he nevertheless knew his written statement of occupation held the potential to mislead electors. This is the critical point, as it was in this manner that his conduct met the scienter requirements for petition invalidation as expressed in Baldwin and its progeny. Specifically, responding to electors who observed "[s]o, you're a lawyer?" with "[o]h, you know, I haven't passed the bar yet but I plan on taking it next year" reflected an understanding that his usage of the term did not fit within society's general idea of what a lawyer is. Indeed, his prepared response was the functional equivalent of an admission that he was not yet a lawyer as most electors would understand the term,

and would not become one until such time that he passed the bar examination. Apparent in his own testimony, therefore, was his appreciation that electors would likely expect more of a "lawyer by occupation or profession" than having simply graduated law school. The Commonwealth Court seems to have identified this concern when it found the Candidate used the term "lawyer" to "enhance his stature" among electors. In re Beyer, supra at 12. To the extent the candidate knowingly used the term to suggest a professional status he had yet to attain, we agree. Mr. Beyer, through his statement of occupation, implied credentials material to the office of legislator that he simply did not yet possess.[10] Yet, he persisted in circulating a nomination petition that he knew could mislead in this respect.

From the same testimony, however, the Commonwealth Court inferred the absence of wrongful intent because it showed, in the court's opinion, that Mr. Beyer "explained [his use of the title 'lawyer'] to an elector when the opportunity arose[.]" Id. at 12. Neither relevant authority nor the evidence of record supports the above premise that an opportunity to provide clear information about a candidate arises only when an elector broaches the topic. The court's position on this point contradicts our jurisprudence recognizing the important role that accurate nomination petitions play in achieving the Election Code's goal of an informed electorate freely supporting a candidate of their choice. See Driscoll, supra at 50. Every presentment of a petition for

---

[10] A candidate's experience working with the law relates materially to his or her qualifications for a seat in the General Assembly, and it is reasonable to view an unlicensed and unemployed law school graduate's occupational profile in these respects as subordinate to and quite different from that of a lawyer. It was in this way that Mr. Beyer enhanced his stature with the nominating public through his false occupational listing.

signature, therefore, represented an opportunity for Mr. Beyer to identify clearly his occupation, and the candidate knew his petition would likely promote misinformation on that very point. Yet, he implemented an "explain only if asked" approach. By neglecting this critical aspect of the record, the Commonwealth Court erroneously overlooked the many electors deprived of the benefit of Mr. Beyer's sporadic and strictly reactive clarifications.[11]

Evidence that a newspaper article identified him correctly as a recent law school graduate was likewise of dubious probity to the issue of intent, moreover, where the record indicates the report failed to address the topic of his occupation any further. That the candidate did not overtly claim or suggest he was a practicing lawyer in the article did not clarify for electors that he was, in fact, ineligible to practice. Consequently, the article left open to readers' speculation the matter of whether the candidate was eligible to

---

[11] The candidate's inability to deliver his clarification to all electors is critical, as it left many to rely exclusively on a materially defective petition. As observed by then Justice Castille in a similar occurrence in Rankin, supra:

> During the hearing, respondent testified as follows[:] "I tell everybody that I practiced law until four years ago, and then I began publishing the newspaper." But, that is not what her nominating petitions demonstrate. Respondent did not have personal contact with every elector who signed her petitions to inform them, contrary to what the petition said, that she was actually a "formerly admitted attorney." Instead, she created a false impression that respondent was a practicing attorney. How was the electorate to know that respondent was not admitted to practice in Pennsylvania?

Id. at 1148 (Castille, J. dissenting).

practice law, and as such had little if any bearing on the misleading nature of the petitions.[12]

The court's inference of the candidate's intent, therefore, finds support in neither the evidentiary record nor relevant authority. The substantial evidence adduced at the hearing established that Mr. Beyer knew his statement of occupation held the potential to mislead electors about his credentials for the office of lawmaker. While he mitigated that potential in several isolated instances, the necessary implication of the evidence is that many electors remained uninformed by any clarification.

Based on the foregoing, we concluded that Mr. Beyer's nomination petitions bore a facial defect, as he was not yet qualified to claim the present occupational or professional status of "lawyer." The defect was both material to an elector's decision to nominate a legislator and incurable by amendment because the candidate knew his representation had the potential to mislead signers about his credentials for the legislative office he sought. Having demonstrated as much, Objectors met their burden of disproving the presumptive validity of the contested nomination petition. Striking Mr. Beyer's petition under such circumstances to avoid misleading the electorate was consistent with the Election Code's purpose of protecting, and not defeating, a citizen's vote. See Dayhoff v. Weaver, 808 A.2d 1002, 1006 (Pa. Commw. 2002). Accordingly, we issued our above-referenced *per curiam* order vacating the order entered in the Commonwealth Court and setting aside Mr. Beyer's nomination petitions.

---

[12] Nor does the record specify when the respective news reports were published, creating the additional question of whether they were even available to electors prior to the filing deadline. Assuming they were published prior to the acquisition of signatures does not, in any event, affect our assessment that they lacked probity as to the issue before us.

Former Chief Justice Castille and former Justice McCaffery did not participate in the consideration or rendering of this opinion.

Mr. Chief Justice Saylor, Mr. Justice Eakin and Madame Justice Todd join the opinion.

Mr. Justice Baer files a dissenting opinion.